William C. Rand, Esq. (WR-7685)
LAW OFFICE OF WILLLIAM COUDERT RAND
228 East 44th Street, 17th Floor
New York, New York 10017
(212) 286-1425

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
OSCAR GARCIA, ANDREY ZAHARIEV,          :
RINAT KHASSANOV, and KRZYSZTOF          :          ECF CASE
GARNEK, Individually and on Behalf of   :
All Other Persons Similarly Situated,   :          Case No.: 08 Civ 9356 (LTS)
                                        :
                            Plaintiffs, :
                                        :
              -against-                 :
                                        :
LA REVISE ASSOCIATES LLC, JEAN          :
DENOYER, REGIS MARINIER,                :
BERNARD COLLIN and JOHN DOES #1-10,     :
                                        :
                           Defendants.  :
-----------------------------------------------------------------x

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Dated: New York, New York
          September 13, 2009

LAW OFFICE OF WILLIAM COUDERT RAND
William Coudert Rand, Esq.
Attorney for Plaintiff, Individually,
and on Behalf of All Other Persons Similarly Situated
711 Third Avenue, Suite 1505
New York, New York 10017
Tel: (212) 286-1425
Co-counsel
Gottlieb & Associates
Jeffrey M. Gottlieb, Esq. (JG-7905)
Dana L. Gottlieb, Esq. (DG-6151)
150 East 18th Street, Suite PHR
New York, New York 10003
Tel: (212) 228-9795

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT……………………………………………………….1

INTRODUCTION……………….…………………………………………………..1

ARGUMENT

I.   PLAINTIFFS ILLEGALLY PAID TIPS TO NON TIPPED
     EMPLOYEES……………………………………………………………..3

     A.   Defendants Illegally Paid Tips from the Tip Pool to Non Tipped
          Employees Which Included Non Service Bartenders, Who Did Not
          Serve Customers Directly, and Managers…………………………………3

     B.   The Tip Pool Improperly Paid Out Monies To Employees Who Did
          Not Contribute to The Tip Pool………………………………….....6

     C.   Defendants Illegally Paid Tips from the Tip Pool To Management
          Employees…………………………………………………………6

     D.   As a Result of the Illegal Tip Sharing, Defendants Lost their Right to
          Apply a Tip Credit Against the Federal Minimum Wage……………….7

II.  THE CAPTAINS WERE MANAGERS WITH THE POWER TO HIRE
     AND FIRE WHO WERE ILLEGALLY PAID A PORTION OF
     PLAINTIFFS' TIPS………………………………………………….....7

III. THE BANQUET COORDINATORS WERE MANAGERS WHO WERE
     ILLEGALLY PAID A PORTION OF PLAINTIFFS' TIPS……………….10

IV.  THE BARTENDERS WERE NON SERVICE BARTENDERS WHO
     DID NOT DIRECTLY SERVE CUSTOMERS AND WERE THUS
     ILLEGALLY PAID A PORTION OF PLAINTIFFS' TIPS……………….11

V.   THE TIP POOL WAS ILLEGAL BECAUSE IT WAS MODIFIED BY
     DEFENDANTS WITHOUT THE WAIT STAFF EMPLOYEES CONSENT…13

VI.  DEFENDANTS ILLEGALLY DESTROYED VIDEO RECORDINGS OF
     THE CAPTAINS AND BAR TENDERS AND THEREFORE THE
     DESTROYED RECORDINGS SHOULD RESULT IN AN ADVERSE
     INFERENCE AGAINST DEFENDANTS……………………………………15

CONTENTS (PAGE 2)

VII.    DEFENDANTS ILLEGALLY REFUSED TO PAY TIPS TO WAIT STAFF
        DURING THEIR TRAINING PERIOD DESPITE THE FACT THE WAIT
        STAFF DIRECTLY SERVED CUSTOMERS WHO LEFT THEM TIPS……..16

VIII.   DEFENDANTS ILLEGALLY FAILED TO PAY PLAINTIFFS THE
        COST OF CLEANING THEIR VEST UNIFORMS……………………………17

IX.     THE INDIVIDUAL DEFENDANTS ARE LIABLE BECAUSE THEY
        ARE LIABLE AS OWNER/MANAGERS AND AS MANAGING MEMBERS
        OF THE LIMITED LIABILITY COMPANY DEFENDANT…………………17

        CONCLUSION………………………………………………………………………….19

iii

TABLE OF AUTHORITIES

CASES                                                                                    Page

*Ansoumana v. Gristede's Operating Corp.*,
    255 F. Supp. 2d 184, 192 (E.D.N.Y. 2003)……………………………………19

*Bernal v. Vankar Enterprises, Inc.*,
    2008 U.S. Dist. Lexis 22814 at \*3 (W.D. Tex. 2008)…………………………..4

*Chan v. Sung Yue Tung Corp.*,
    2007 U.S. Dist. Lexis 7770 (S.D.N.Y. Feb. 1, 2007)…………………………7,13

*Chung et al. v. The New Silver Palace Restaurant, Inc.*,
    246 F. Supp. 2d 220 (S.D.N.Y. 2002)………………………………………..2,7

*Elkins v. Showcase*,
    704 P.2d 977, 988 (Kan. 1985)…………………………………………………4

*Hai Ming Lu v. Jing Fong Restaurant, Inc.*,
    503 F. Supp. 2d 706, 711 (S.D.N.Y. 2007)……………………………………..4

*In re Starbucks Employee Gratuity Litigation*,
    264 F.R.D. 67 (S.D.N.Y. 2009)…………………………………………………2

*Myers v. The Copper Cellar Corp.*,
    192 F.3d 546 (6th Cir. 1999)……………………………………………………4

*Pepler v. Coyne*,
    33 A.D.3d 434 (1st Dept 2006)………………………………………………17

*Samiento v. World Yacht Inc.*,
    10 N.Y.3d 70 (2008)…………………………………………………………2,16

*Yu G. Ke v. Saigon Grill, Inc.*,
    2008 U.S. Dist. LEXIS 86300, (S.D.N.Y. Oct. 21 2008)………………………2

STATUTES

Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA")……………………...Passim

29 U.S.C. § 203 (d), (m) and/or (t)…………………………………………………Passim

S. REP. 93-690, at 43(Feb. 22, 1974)…………………………………………………5

DEPT. LABOR FIELD OPERATIONS HANDBOOK § 30d04(a)…………………..5

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

| | | |
|---|---|---|
| OSCAR GARCIA, ANDREY ZAHARIEV, | : | |
| RINAT KHASSANOV, and KRZYSZTOF | : | ECF CASE |
| GARNEK, Individually and on Behalf of | : | |
| All Other Persons Similarly Situated, | : | Case No.: 08 Civ 9356 (LTS) |
| | : | |
| Plaintiffs, | : | |
| | : | |
| -against- | : | |
| | : | |
| LA REVISE ASSOCIATES LLC, JEAN | : | |
| DENOYER, REGIS MARINIER, | : | |
| BERNARD COLLIN and JOHN DOES #1-10, | : | |
| | : | |
| Defendants. | : | |

-------------------------------------------------------------x

## PRELIMINARY STATEMENT

Plaintiffs, on behalf of themselves and all other persons similarly situated, by their attorneys, submit this memorandum of law in opposition to Defendants' Motion for Summary Judgment (hereafter, the "Motion").

**INTRODUCTION**

In this action, among other claims for relief, Plaintiffs seek to recover unpaid minimum wage and overtime compensation on behalf of themselves and other similarly situated employees of Defendants, pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA"). Plaintiffs also seek compensation for Defendants' failure to pay them tips during their training period of employment and failure to pay them for the cost of cleaning their uniforms.

The testimony in this case shows that Defendants' "Captain" employees were in fact managers with the right to hire and fire who were illegally paid a portion of the

1

plaintiff wait staff's tips and that Defendants' banquet coordinator employees also were manager employees who were also illegally paid a portion of the plaintiff wait staff's tips.  The testimony also shows that the Defendants' bar tender employees were non-service bar tenders who did not directly serve customers and were illegally paid a portion of the wait staff's tips.  The testimony and documents also show that the tip pool was unilaterally modified by Defendants without the consent of the wait staff and therefore the tip pool was not legal and did not permit the application of the tip credit to the minimum and overtime wages paid to the wait staff.

Because the plaintiffs did not receive all the tips to which they were entitled, the Defendants were not entitled to reduce the minimum wage paid to the wait staff by the tip credit and therefore the plaintiffs were in fact paid less than minimum wage.  See Chu Chung et al. v. The New Silver Palace Restaurant, Inc., 246 F. Supp. 2d 220, 229-230 (S.D.N.Y. 2002) (tip credit disallowed where defendant failed to pay employees all tips received); Chan et al. v. Sung Yue Tung Corp., 2007 U.S. Dist. Lexis 7770 at ¶66 (S.D.N.Y. Feb. 1, 2007) (holding that tip credit disallowed where tips are not properly distributed to wait staff); Yu G. Ke v. Saigon Grill, Inc., 2008 U.S. Dist. LEXIS 86300, (S.D.N.Y. Oct. 21 2008) (same); See Samiento v. World Yacht Inc., 10 N.Y.3d 70 (2008) (service or gratuity fees collected by employer are required to be paid to wait staff). Defendants' reliance on *In re Starbucks Employee Gratuity Litigation*, 264 F.R.D. 67 (S.D.N.Y. 2009) is misplaced because the manager employees in Starbucks directly served the customers on a regular basis and did the same tasks as the server employees.

Finally, the testimony shows that plaintiffs were not paid tips left for them during their training period and were not paid for the cost of cleaning their uniforms

2

Accordingly, material issues of fact exist as to all issues and summary judgment should be denied.

**ARGUMENT**

**I.    PLAINTIFFS ILLEGALLY PAID TIPS TO NON TIPPED EMPLOYEES**

Plaintiffs have shown through their declarations that Defendants improperly shared their tips with the managerial employees and non-service bartenders who did not serve customers directly and did not regularly receive tips, and who did not contribute any tips to the tip pool.  Plaintiffs have also shown that the tips paid at private parties were improperly shared with the private party manager, who did not regularly receive tips and who did not pay tips into the tip pool.  *See* Declarations of the Named Plaintiffs and Reply Declarations of Zahariev and Khassanov and the Declaration of Opt in Plaintiff Johnny Rivas attached as Exhibit  F to the Rand Declaration.

**A.    Defendants Illegally Paid Tips from the Tip Pool to Non Tipped Employees Which Included Non Service Bartenders, Who Did Not Serve Customers Directly, and Managers**

Defendants illegally paid tips from the tip pool to non service bartenders, who served only wait staff and did not serve customers directly and thus did not receive tips. Defendants also illegally paid tips from the tip pool to Captains and the Banquet Coordinators who were management employees who did not regularly receive tips and did not contribute any tips to the tip pool.  *See* Declarations of the Named Plaintiffs and Reply Declarations of Zahariev and Khassanov.

Tip pools are only permitted among "tipped employees" who are defined as employees "engaged in an occupation in which he [or she] customarily and regularly

receives more than $30 a month in tips." 29 U.S.C. § 203(m) and (t).  If a tip pool

includes employees who are not "tipped employees" then the employer loses the right to

take the tip credit."  *See Elkins v. Showcase*, 704 P.2d 977, 988 (Kan. 1985) (interpreting

the FLSA and finding non-service bartenders were improperly included in tip pool

because they were physically separated from patrons and did not have any direct

customer contact and made no contributions to the tip pool); *Myers v. The Copper Cellar*

*Corp.*, 192 F.3d 546 (6th Cir. 1999) (employer's tip pool was improper because it

included salad makers who did not have any direct interaction with the diners); *Chan v.*

*Sung Yue Tung Corp.*, 2007 U.S. Dist. Lexis 7770 (S.D.N.Y. Feb. 1, 2007) (employer

operated illegal tip pool because it shared the pool with part time workers who were not

regularly tipped employees and with management); *Bernal v. Vankar Enterprises, Inc.*,

2008 U.S. Dist. Lexis 22814 at *3 (W.D. Tex. 2008) (granting initial certification where

plaintiffs alleged that tip pool illegally included non-tipped employees including

managers and cleaning crew); *Hai Ming Lu v. Jing Fong Restaurant, Inc.*, 503 F. Supp.

2d 706, 711 (S.D.N.Y. 2007) ("an issue of fact remains to be tried regarding whether the

pantry workers and dim sum servers, while "not the primary customer contact . . . have

more than de minimis interaction with the customers" and are otherwise entitled to share

in the tip pool, or, in the alternative, whether they are "like dishwashers, cooks, or off-

hour employees like an overnight janitor [who] do not directly relate with customers at

all" and who may not share in the pool.")

Neither the language of FLSA nor the relevant regulations provide much clear

guidance regarding which employees or occupations may participate in mandatory tip

pools or tip sharing arrangements.  Section 203(m) states only that "this subsection shall

not be construed to prohibit the pooling of tips among employees who customarily and regularly receive tips." 29 U.S.C. § 203(m).  Legislative history and the Department of Labor Field Operation Handbook provide some additional guidance, setting forth examples of the kinds of employees that may be included in a mandatory tip pool.  In a report on the 1974 amendments to Section 203(m), the Senate Committee on Labor and Public Welfare explained:

> Nor is the requirement that the tipped employee retain such employee's own tips intended to discourage the practice of pooling, splitting, or sharing tips with employees who customarily and regularly receive tips-- e.g., waiters, bellhops, waitresses, countermen, busboys, service bartenders, etc. On the other hand, the employer will lose the benefit of this exception if tipped employees are required to share their tips with employees who do not customarily and regularly receive tips--e.g., janitors, dishwashers, chefs, laundry room attendants, etc.

S. REP. 93-690, at 43(Feb. 22, 1974). The Department  of Labor Field Operations Handbook echoes the Senate Report, stating that the following occupations have been recognized as eligible for participation in a tip splitting or pooling arrangement: "1) waiters/waitresses; 2) bellhops; 3) counter personnel who serve customers; 4) busboys/girls (server helpers); 5) service bartenders." DEPT. LABOR FIELD OPERATIONS HANDBOOK § 30d04(a). The Field Operations Handbook likewise adds that tipped employees may not be required to share tips "with employees who have not customarily and regularly participated in tip pooling arrangements," noting that the following "employee occupations" would not be eligible to participate: "1) Janitors; 2) Dishwashers; 3) Chefs or cooks; 4) Laundry room attendants." 40 Id. § 30d04(c).

Thus, it is clear that non-service bartenders (as opposed to service bartenders who directly serve customers) are not permitted to be included in tip pools and that managers

also are not permitted to be included.

**B.  The Tip Pool Improperly Paid Out Monies To Employees Who Did Not Contribute to The Tip Pool**

Here, Plaintiffs were required to pay money into a tip pool that paid out monies to employees who did not contribute to the tip pool.  Reply Declarations of Zahariev and Khassanov.  Such a pool is illegal under the FLSA as it causes the employees who contribute to lose their tips in violation of 29 USC §203, which requires that "all tips received by such employee have been retained by the employee."

Defendants' tip pool was not a pooling of tips, as the captains and the bartenders never paid any tips they may have received into the tip pool.  Accordingly, it was not a tip pool recognized by the FLSA, and did not permit Defendants to apply a tip credit to Plaintiffs' wages.

**C.  Defendants Illegally Paid Tips from the Tip Pool To Management Employees**

Defendants illegally paid tips from the tip pool to Captains who were managers and did not perform wait staff services, did not regularly receive tips and did not contribute tips to the pool.  *See* Declarations of the named Plaintiffs, Oscar Garcia, Andrey Zahariev, Rinat Khassanov, and Krzystof Garnek ("Named Plaintiffs") and the Reply Declarations of Zahariev and Khassanov.  Specifically, Defendants illegally paid tips out of the tip pool to Captains and Banquet Coordinators whose roles were managerial.  Neither the Captains nor the Banquet Coordinators ever contributed any tips to the tip pool.  *See* Reply Declarations of Zahariev and Khassanov.

Employers are not permitted to receive any portion of tipped employees' collected

6

gratuities.  See 29 C.F.R. § 531.35.  Under the FLSA, an employer "includes any person acting directly or indirectly in the interest of the employer in relation to an employee." 29 U.S.C. § 203(d).  Thus, if an employer or its agents partake in a tip pool arrangement, the tip pool is illegal.  *See Chung v. New Silver Palace Restaurant, Inc.*, 246 F. Supp. 2d 220 (S.D.N.Y. 2002) (tip pool was tainted by participation of "black jackets" who managed wait staff); *Chan v. Sung Yue Tung Corp.*, 2007 U.S. Dist. Lexis 7770 at *33 (S.D.N.Y. Feb. 1 2007) (finding that managers of waiters improperly participated in tip pool by analyzing facts "with an eye to the 'economic reality' presented by the facts").

Here, the Captains and the Banquet Coordinators were in fact managers of the wait staff who performed no direct wait staff duties and did not customarily receive tips. Accordingly, their sharing in the tip pool constitutes a direct violation of the FLSA.

> **D.     As a Result of the Illegal Tip Sharing, Defendants Lost their Right to Apply a Tip Credit Against the Federal Minimum Wage**

If a restaurant improperly shares tips with managerial employees or non-service employees such as service bartenders, it loses its right under federal law to apply a tip credit against the wait staff employees' hourly minimum wage and is liable under the FLSA.  *See Chung v. New Silver Palace Restaurant, Inc.*, 246 F. Supp. 2d 220 (S.D.N.Y. 2002); supra.

Here, Defendants improperly operated an illegal tip pool which shared tips with managerial employees and non-service bartenders who did not customarily receive tips and did not contribute to the tip pool.  Accordingly Defendants are liable under the FLSA for failing to pay minimum wages.  In addition, Defendants in this case also failed to pay time and one half the federal statutory minimum wage and thus are also liable under the

FLSA for failing to pay overtime at time and one half the wait staff's minimum wage rate.  Accordingly, a clear violation of the FLSA has been shown.


II.     **THE CAPTAINS WERE MANAGERS WITH THE POWER TO HIRE AND FIRE WHO WERE ILLEGALLY PAID A PORTION OF PLAINTIFFS' TIPS**

The Captains were in fact managers who were not permitted to receive the wait staff's tips.  Plaintiffs stated in their declarations, "The Captains acted as managers and did not perform any waiter or bus boy or runner services." *See* Declaration of Johnny Rivas at ¶18; Oscar Garcia at ¶ 19; Krzysztof Garnek at ¶ 19; Andrey Zahariev at ¶ 18; Rinat Khassanov at ¶ 18.  In addition Plaintiffs who were deposed also stated that Captains did not perform wait staff duties but rather were managers who had the power to hire and fire employees.  See Garcia Testimony (attached as Exhibit G to the Rand Declaration)  and pp. 30-35, 38-40 (says hired by Captain Arnaud and that Captains Francois and Arnaud hired wait staff); Garnek testimony (attached as Exhibit H to the Rand Declaration) at 25 lines 12-16; Declaration of Johnny Rivas at ¶ 3 (says hired directly by Captains at end of interview).

Garcia said that he was hired by Arnaud (Garcia Testimony at 28-35)  He also specifically said that captains had the authority to hire and fire employees (Transcript at 39, lines 22-24; 48, line 21 to 49 line 5) and specifically testified that Paul, a Captain, fired Byron, a server.  (Garcia Transcript at 39, line 25 and 40, lines 1-15).  Garcia testified that Captains had same authority to hire and fire as Bernard Collin.  (Garcia testimony at 45, Lines 14-19).  Garcia testified that the "Captains" were in fact managers. (Garcia Testimony at 61, line 14-22) who with minor exceptions never served customers.

(Garcia Testimony at 62-64; 106 line 23 to 107 line 3).  Garcia testified that everyone

including customers referred to the "Captains" as "Managers." (Garcia testimony at 64,

lines 12-20).  Garcia testified that the Captain, Francois, promoted him from Busser to

Runner and made the decision to give him an extra point from the tip pool.  (Garcia

Testimony at 74, line 13 to 75, line 8; 77 line 20 to 78 line 8; 82, lines 13-21; 87 lines 4-

25).  Garcia testified that "Captain" Paul Ryan supervised the entire wait staff of the

restaurant. (Garcia Testimony at 104, Lines 3-7)

Garnek testified that the "Captains" were managers who had the power to hire.

(Garnek Testimony at 14 line 16 to 16 line 11).  Garnek testified that Bernard Collin was

often not at the restaurant during shifts.  (Garnek Testimony at 48 line 19 to 49 line 7).

Rinat Khassanov testified that the Captains had the power to change servers'

schedules and did in fact change his schedule.  (Khassanov Testimony [attached as

Exhibit I to the Rand Declaration] at p. 36 line 16 to 37 line 21). Khassanov testified that

the "Captain" Arnaud gave him a test and after he passed the test promoted him from

server in training to full server.  (Khassanov testimony at 48, lines 3-25; page 113).

Captains only very rarely helped out servers in unusually busy periods.  (Khassanov

testimony at 60, lines 20-25; 61 lines 8-15; 145, line 11 to 47, line 2).  The Captains

generally hung out and talked with the hostesses. (Khassanov at 62 lines 13-24).

Captains spoke only to the regular customers and did not speak at all to most of the

tourist customers.  (Khassanov at 64 line 3 to 65 line 16).  Captains were referred to as

Maitre D's.  (Khassanov Testimony at 126 lines 8-9).

Zahariev testified that he found the job on Craig's list and showed up with a

resume and after a quick interview with Captain Francois was immediately given a server

job by Francois.  (Zahariev Testimony [attached as Exhibit J to the Rand Declaration] at

14 line 14 to 15 line 24).   The Captains only rarely performed any wait staff services.

(Zahariev Testimony at 31 lines 4-7).  Zahariev testified that he saw Captains take food

orders only two to three times in a year period and never saw any Captain take a drink

order.  (Zahariev 32 lines 3-10).  The Captain promoted Zahariev from server in training

to full server. (Zahariev Testimony at 58 lines 9-11).  The Captains determined which

table the servers were to serve and assigned the wait staff to the private parties.

(Zahariev Testimony at 79 lines 4-15; 187 lines 13-17).  The Captains met and greeted

customers but did not perform any wait staff services for customers.  (Zahariev

Testimony at 229 lines 5-20).  Captains had power to fire a waiter from a shift.  (Zahariev

Testimony at 231 lines 3-7)

     Ms. Ricardo, a bartender testified that the Captains were referred to as Maitre D's

and that the Captains took over management of the restaurant when Bernard Collin was

not at the restaurant.  (Ricardo Testimony [attached as Exhibit K to the Rand Declaration]

at 17 lines 14-22; 62 line 12 to 63 line 6; 17 line 23 to 18 line 2).  The Patrons left tips

directly for the servers in the form of cash tips on the table and credit card tips.  (Garnek

pp. 29-32, Khassanov at 56, line 11-15).  These tips should not have been shared with the

Captain/Managers.

## III.   THE BANQUET COORDINATORS WERE MANAGERS WHO WERE ILLEGALLY PAID A PORTION OF PLAINTIFFS' TIPS

     The Banquet coordinators did not perform wait staff services for the patrons and

thus should not have received a percentage of the tips given to the wait staff.  Oscar

Garcia testified that Banquet Coordinators took 5% of the tips related to private parties.

(Garcia Testimony at 175-177)  Garnek and Khassanov testified that Banquet

Coordinators shared in the tip pool.  (Garnek at 32, 15-19) (Khassanov at 65, lines 16-25)

Khassanov testified that the banquet coordinator drank champagne with the guests and

that he served her champagne.  (Khassanov Testimony at 103 lines 1-14).

     The Banquet Coordinator was paid a percentage of the gratuity paid for the

private parties.  (Zahariev Testimony at 151 line 11 to 152 line 8).  He also testified that

the banquet coordinator did not serve the guests and merely acted as a manager.

(Zahariev at 151 line 11 to 152 line 8).  A mandatory 20% gratuity was charged for

private parties and distributed in part to Captains and the Banquet Coordinator.  (Zahariev

Testimony at 193 line 1 to 197 at line 12).

## IV.   THE BARTENDERS WERE NON SERVICE BARTENDERS WHO DID NOT   DIRECTLY SERVE CUSTOMERS AND WERE THUS ILLEGALLY PAID A PORTION OF PLAINTIFFS' TIPS

     The Bartenders were non service bartenders who did not directly serve customers.

Oscar Garcia testified that shortly after he was hired, the stools at the bar were removed

and replaced with dinning room tables and that the stools were still removed at the end of

his employment, and that during the period the stools were removed the bar tender was

always a non service bartender who did not serve any patrons at stools at the bar.  (Garcia

Testimony at 122, Line 9-19; 125, 6-22).  Garcia testified that he never ever saw a

bartender deliver a drink to a table.  (Garcia Testimony at 161, Lines 3-5)

     Khassanov also testified that when he worked at Defendant's restaurant, there

were no bar stools in front of the bar and the bar tenders were non service bar tenders

who served the waiters who in turn served the patrons.  (Khassanov Testimony at 66;

lines 17-24. 68; lines 10-13; 69, 16-20; 71 line 19 to 72 line 2).  The bartenders never

served the patrons directly.  (Khassanov Testimony at 160, lines 7-18; 173, lines 19-25;

174, lines 1 to 175, line 12).  The patrons on the terrace often did not see at any time the

bartenders in the inside of the restaurant. (Khassanov Testimony  at 72 at line 7 to 73 at

line 25).  Even inside the bar certain tables had no view of the bar.  (Khassanov

Testimony at 74 lines 5-13).  The bartenders shared in the tips of the private parties also

even though they were only non service bar tenders who made drinks for the servers who

then served the drinks directly to the customers.  (Khassanov Testimony at 106, lines 21-

23).  Khassanov testified that there was no captain at the private party at which he

worked  (Khassanov Testimony at 107 line 25 to 108 line 16) and that the banquet

coordinator was the manager of the party.  (Khassanov at 103 lines 21-23)  He also

testified that the mandatory tip charged at the private party was 20%.

     Zahariev testified that from early March 2007 until November 2007 when he left,

there were no stools in front of the bar and the bar tenders were non service bar tenders

who served drinks only to servers who then served the drinks to the patrons.  (Zahariev at

50 lines 16-25).  Zahariev stated:

> That's one of the things that I'm objecting at Brasserie Rhulmann.  And
> at some point we did – the bartenders were not directly serving
> customers.  <u>From I would say March, the beginning of March 2007
> until I left in November, there was no bar seating at the bar and the bar
> tenders were not directly serving customers.</u>

(Zahariev Testimony at 50 lines 16-25).  Zahariev never saw a bartender directly serve a

patron because drinks were all served to patrons by the wait staff.  (Zahariev at 51 line 24

to 52 line 12; 52 line 25 to 53 line 11; 54 line 14 to 55 line 13).  Zahariev testified:

> Q.    And from the period of March 2007 until the day you left your
>         employment at the Brasserie Ruhlmann, you never saw a

bartender serve a patron a drink, is that your testimony?

A.  Yes.

Q.  You never saw a bartender serve one customer a drink, is that correct?

A.  There were no bar chairs, and also there were tables, sit down tables by the bar, so customers would not - - nobody would sit at the bar.  And nobody would order a drink at the bar.

Q.  And nobody stood at the bar?

A.  And nobody stood at the bar.

(Zahariev Testimony at 51 line 24 to 52 line 12).

Q.  How did patrons receive drinks they ordered from the bar?

A.  They were delivered to the table.

Q.  By whom?

A.  By the waiters.

Q.  Only the waiters?

A.  Yes.

Q.  No one else?

A.  And also a busboy who was a drink runner.

(Zahariev Testimony at 52 line 25 to 53 line 10).  The bartenders received drink orders from tickets produced by the computer and then made the drinks and provided them to the waiters to be served to the customers.  (Zahariev Testimony at 54 line 22 to 55 line 15).  The drinks served at the private parties were also served to the customers by the waiters and not by the bartenders.  (Zahariev Testimony at 144 lines 16-23).

## V.   THE TIP POOL WAS ILLEGAL BECAUSE IT WAS MODIFIED BY DEFENDANTS WITHOUT THE WAIT STAFF EMPLOYEES CONSENT

If a tip pool is not properly distributed, it cannot be used as justification for the tip credit.  Heng Chan et al. v. Sung Yue Tung Corp., 2007 U.S. Dist. Lexis 7770 at ¶66 (S.D.N.Y. Feb. 1, 2007) (holding that tip credit disallowed where tips are not properly distributed to wait staff).  Garnek testified that captains increased the points given to a waiter by half a point after the completion of a shift based upon the waiter's good performance.  (Garnek Testimony at 38, line 23 to 40 line 17; 59 line 6 to 61 line 22; 102

lines 8-13; 105 line 18 to 106 line 3); (See tip sheets attached as Exhibit C to the Rand Declaration showing half points).  The Captains often cut servers mid shift and then cut their points.  (Garnek Testimony at pp. 55-56).  Garnek said that when he started working the Captains gave him only four points and gave other waiters five points, contrary to his tip pool agreement.  (Garnek testimony at 57-58) (See tip sheets and tip pooling agreement signed by Garnek attached as Exhibit C to the Rand Declaration).  Khassanov testified that he received 4 points as a server rather than the five points he was supposed to receive according to the tip pool.  (Khassanov Testimony at 161 line 8 to 162 line 8) (See tip sheets and tip pooling agreement attached as Exhibit D to the Rand Declaration). Khassanov testified that he understood that he was to receive 5 points from the tip pool before he started working and was only paid 4 points.  (Khassanov testimony at 198 lines 13-24).   The other servers told him that at Brasserie Ruhlmann, servers do not get their full 5 points to which they agreed until after they had worked a number of weeks at 4 points.  (Khassanov Testimony at 198 line 25 to 199 line 12).

Zahariev testified that approximately 20 wait staff met with the captains at a meeting for about an hour in the summer of 2007 to demand a change in the tip pool because they did not think it was fair and because they did not believe that the Captain/Managers had any right to receive tips given that they did not directly serve customers.  (Zahariev Testimony at pages 17-22; 29).  Despite the fact that the wait staff did not agree to the tip pooling, they were told that the tip pooling structure would not be changed.  (Zahariev Testimony at 20 lines 15-17).

Zahariev testified that he was first only paid 4 points despite the tip pool agreement to pay him 5 points and that the Captains in their discretion would give certain

severs an extra .5 point as a reward for achieving high sales at their tables. (Zahariev Testimony at 128, line 6 to 129 line 13) (See Rand Exhibit B which shows tip sheets showing .5 added to certain server's points).  By adding points to one server, the Captains were in fact illegally lowering the percentage of the other servers.  There is even a note on a tip sheet showing that Bernard Collin at times redirected moneys in the tip pool to persons he favored.  (See Rand Declaration at Exhibit A a note stating "The amount of $55 was deducted from the total amount of CC Tips and was forced to Nichola's tip as courtesy of Bernard.").

Thus there are material issues of fact as to whether the tip pool was distributed in accordance with the wait staff pooling agreement.

## VI.  DEFENDANTS ILLEGALLY DESTROYED VIDEO RECORDINGS OF THE CAPTAINS AND BAR TENDERS AND THEREFORE THE DESTROYED RECORDINGS SHOULD RESULT IN AN ADVERSE INFERENCE AGAINST DEFENDANTS

Defendants ran multiple video cameras that recorded the wait staff, bar tenders, and Captains at the Brasserie Ruhlmann for 16 hours per day.  The cameras recorded over themselves every 90 days.  Defendants unilaterally selected and produced only short portions of the video tape, sometimes only 25 seconds, and refused to preserve the full record of recordings.  See Letters attached as Rand Declaration at Exhibit E.  Accordingly, Defendants' intentional refusal and failure to preserve the very relevant video recordings of the Captains and bar tenders requires that the missing recordings be presumed adverse evidence against Defendants and in Plaintiffs' favor.  *See West v. Goodyear Tire & Rubber Co*., 167 F.3d 776, 779 (2d. Cir., 1999)

Sanctions are warranted where: (1) the party having control over the evidence had

an obligation to preserve it at the time it was destroyed; (2) the records were destroyed "with a culpable state of mind"; and (3) the destroyed evidence was "relevant" to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense. *Residential Funding Corp. v. Degeorge Fin. Corp.*, 306 F.3d 99, 107 (2d. Cir. 2002) *quoting Byrnie v. Town of Cromwell*, 243 F.2d 93, 107-12 (2d. Cir. 2001).  Thus there is a material issue of fact regarding the role of the bar tenders and Captains.

**VII.   DEFENDANTS ILLEGALLY REFUSED TO PAY TIPS TO WAIT STAFF DURING THEIR TRAINING PERIOD DESPITE THE FACT THE WAIT STAFF DIRECTLY SERVED CUSTOMERS WHO LEFT THEM TIPS**

The Defendants failed to pay tips to servers in training during their training period.  See Declaration of Johnny Rivas at ¶¶ 7-9.  Khassanov testified that he performed server duties for a two week training period and except for a few shifts where he shadowed servers, he performed as a server directly serving customers. (Khassanov testimony at 23 line 8 to 25 line 12)  He testified that he did not receive tips during his training period even though he directly served customers.  (Khassanov Testimony p. 46, line 13-17).  Andrey Zahariev testified that he did not receive tips during his training period.  (Zahariev Testimony at 14, lines 8-13).  The tips were not de minimus.  Garcia testified that as a Busboy his small share of the tips equaled $40-$70 per shift (Garcia Testimony at 98, lines 5-11).  Thus there is a material issue as to whether Defendants failed to pay tips to wait staff in training.  *See Samiento v. World Yacht Inc.*, 10 N.Y.3d 70 (2008) (service or gratuity fees collected by employer is required to be paid to wait staff).

16

## VIII.   DEFENDANTS ILLEGALLY FAILED TO PAY PLAINTIFFS THE COST OF CLEANING THEIR VEST UNIFORMS

The Plaintiffs have also stated in their declarations and in their deposition testimony that they were not paid for the cleaning of their vest uniforms and that Defendants did not offer to clean their vest uniforms.  *See* Declaration of Oscar Garcia at ¶ 8; Krzysztof Garnek at ¶ 8; Andrey Zahariev at ¶ 8; Rinat Khassanov at ¶ 8; (Khassanov Testimony at 187, line 10 to 188 line 6).  Zahariev testified that his vest was never replaced and that he asked to have his vest replaced and was told that there were no replacement vests.  (Zahariev Testimony at 148 line 6 to 149 line 4).  Bernard Collin claims that Defendants dry cleaned the vests but his invoices attached to his declaration as Exhibit B all are from dates in 2009 after the complaint filing date of October 30, 2008.  Furthermore, his one invoice from 2007 does not reference vests and claims it is charging only 25 cents per each of 40 items which is less than would be charged for a vest.  Accordingly, there is a material issue of fact for trial regarding the cleaning of uniforms.

## IX.   THE INDIVIDUAL DEFENDANTS ARE LIABLE BECAUSE THEY ARE LIABLE AS OWNER/MANAGERS AND AS MANAGING MEMBERS OF THE LIMITED LIABILITY COMPANY DEFENDANT

The individual defendants Jean Denoyer and Regis Mariner are together the sole managing members of La Revise Associates, LLC and thus are liable to the full extent of Defendant La Revise Associates LLC.  (Denoyer Testimony at 56 and Mariner Testimony at 59).  S*ee Pepler v. Coyne*, 33 A.D.3d 434 (1st Dept 2006) (managing members not protected from employment discrimination claims).  In addition, both

Denoyer and Marinier talked with Bernard Collin about the management of Brasserie
Ruhlmann on a regular basis and participated in the management of the restaurant.
(Marinier Testimony [attached as Exhibit L to the Rand Declaration] at 30-32 and
Denoyer Testimony [attached as Exhibit M to the Rand Declaration]  at 58, 69).

Marinier has always owned at least 39% of Defendant LaRevise Associates LLC
and creates and reviews the financials of the Restaurant on a monthly basis and provides
a copy to Bernard Collin.  (Marinier at 19-20, 37, 59)  Marinier reviewed the employment
documents that employees of the restaurant were to sign.  (Marinier at 38-39)  Marinier is
knowledgeable about numerous employees and their positions (Marinier at 40-41) and
about the video cameras at the restaurant (Marinier at 47-48).  Marinier met Bernard
Collin to discuss payroll and marketing ideas, and Marinier provided his advice.
(Marinier at 36, 51-52)  Marinier has knowledge of how the waiters are paid tips.
(Marinier at 53).  Marinier negotiated Bernard Collin's employment agreement (Marinier
at 88).  Collin cannot fire the chef of Brasserie Ruhlmann without the consent of the
Managing Members [Denoyer and Marinier] of La Revise Associates LLC, and the
Managing Members have had the right to terminate Bernard Collin since December 31,
2005. (Marinier at 88-90).

Jean DeNoyer owns 51% of La Revise Associates LLC (Denoyer at 63-64).
Denoyer reviews the financials of the restaurant and discussed them with Bernard Collin
and Regis Marinier (Denoyer at 69).  Denoyer and Marinier both made the decisions as to
how invest the monies of La Revise. (Denoyer at 58). Denoyer negotiated and signed
Bernard Collin's employment agreement (Denoyer at 37; Marinier at 88) and made the
decision to install cameras at the restaurant and to purchase vests for the servers.

(Denoyer at 89, 100). Denoyer hired Collin and the chef at the restaurant (Denoyer at 94-95)

Officers and owners of corporations may be deemed employers under the FLSA where "the individual has overall operational control of the corporation, possesses an ownership interest in it, controls significant functions of the business, or determines the employees' salaries and makes hiring decisions." *Ansoumana v. Gristede's Operating Corp.*, 255 F. Supp. 2d 184, 192 (E.D.N.Y. 2003) (citing cases).  Accordingly, there is a material issue of fact as to the liability of Denoyer and Marinier.

**CONCLUSION**

For the foregoing reasons, Defendants' motion for summary judgment should be denied.

Dated: New York, New York
       September 13, 2010

> LAW OFFICE OF WILLIAM COUDERT RAND
>
> S/William C. Rand
> _____
> William Coudert Rand, Esq. (WR-7685)
> Attorney for Plaintiff, Individually,
> and on Behalf of All Other Persons Similarly Situated
> 711 Third Avenue, Suite 1505
> New York, New York 10017
> Tel: (212) 286-1425
>
> Co-counsel
> Gottlieb & Associates
> Jeffrey M. Gottlieb, Esq. (JG-7905)
> Dana L. Gottlieb, Esq. (DG-6151)
> 150 East 18th Street, Suite PHR
> New York, New York 10003
> Tel: (212) 228-9795