USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 13 JAN 2011

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

OSCAR GARCIA et al.,

                Plaintiffs,

-against-

LA REVISE ASSOCIATES LLC et al.,

                Defendants.

-------------------------------------------------------x

No. 08 Civ. 9356 (LTS)(THK)

### MEMORANDUM OPINION AND ORDER

        In this collective and putative class action, Plaintiffs Oscar Garcia ("Garcia"), Andrey Zahariev ("Zahariev"), Rinat Khassanov ("Khassanov"), and Krzystof Garnek ("Garnek," collectively, "Plaintiffs") assert claims on behalf of themselves and other similarly situated individuals against La Revise Associates LLC ("La Revise"), Jean Denoyer ("Denoyer"), Regis Marinier ("Marinier"), and Bernard Collin ("Collin," collectively, "Defendants") for unpaid wages and overtime compensation pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq. ("FLSA"), and the overtime and wage payment provisions of the New York Labor Law ("NYLL"). The Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331 and 1367. Pending before the Court is Defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(c).

        The Court has considered thoroughly the parties' submissions and, for the following reasons, Defendants' motion is granted.

BACKGROUND

The following facts are undisputed except as otherwise indicated.[1] Defendant La Revise operates Brasserie Ruhlmann (the "Restaurant") in New York City. Plaintiff Garcia worked as a busboy and runner for the Restaurant, while Plaintiffs Zahariev, Khassanov, and Garnek were employed as servers. (Decl. of W. Rand ("Rand Decl."), Ex. G, Dep. of O. Garcia ("Garcia Dep.") ¶ 36:7-9; Ex. J, Dep. of A. Zahariev ("Zahariev Dep.") ¶ 14:1-2; Ex. I, Dep. of R. Khassanov ("Khassanov Dep.") ¶ 22:25; Ex. H, Dep. of K. Garnek ("Garnek Dep.") 10:2-4.) Defendants Marinier, Denoyer, and Collin are all part-owners of La Revise and the Restaurant. (Rand Decl., Ex. N, Dep. of J. Denoyer ("Denoyer Dep.") ¶ 22:15-23:17.)

Defendants Marinier, Denoyer, and Collin opened the Restaurant in Rockefeller Center in February of 2006. (Decl. of B. Collin ("Collin Decl.") ¶ 1.) Defendant Collin acts as the general manager and supervises the everyday business of the Restaurant, including the hiring and firing of employees and the setting of employee schedules. (Id.) Plaintiffs checked into work using a hand scanner supplied by Defendants (Rand Decl., Ex. F, Decl. of O. Garcia ("Garcia Decl.") ¶ 4.), and they received weekly pay stubs showing their hours, deductions, and wages earned for that pay period. (Collin Decl. ¶ 19.)

While employed at the Restaurant, the Plaintiffs were paid an hourly wage supplemented by a share of the Restaurant's tip pool. (Defs.' Rule 56.1 Statement ("Defs.' 56.1 Stmt") ¶¶ 32, 42, 51, 54, 56.) The Restaurant's tip pool included servers, runners, busboys, captains, bartenders, and the Restaurant's banquet coordinator. (Collin Decl. ¶¶ 17-18.) According to Defendants, these employees constituted the Restaurant's "customer service team."

---

[1] Facts characterized as undisputed are identified as such in the parties' statements pursuant to Local Civil Rule 56.1 or drawn from evidence as to which there is no non-conclusory contrary factual proffer.

(Id. ¶ 5.)

Each member of the "customer service team" who participated in the tip pool played a different role in the Restaurant's service. The Restaurant's servers noted customers' orders and entered them with the kitchen. (Collin Dep. ¶ 79:3-8.) Servers ensured that patrons' food arrived on time and that patrons received all of the food and beverage items in their orders. (Id.) They also served wine and delivered checks on request. (Id.) The Restaurant's food runners delivered food items from the kitchen to the Restaurant's patrons while the drink runners delivered drinks from the Restaurant bar to the customers' tables. (Id. ¶ 77:25-78:11; Weiner Decl., Ex. H, Dep. of J. Ricardo ("Ricardo Dep.") ¶ 10:9-15.) Busboys or "bussers" reset tables, provided patrons with water, condiments, and service items, polished silverware, and folded napkins. (Id. ¶ 78:16-21.)

According to the job description supplied by Defendants, the captains' job functions included training, coaching, and counseling the restaurant service team, serving and clearing food and beverage items, setting up the dining room, printing checks, "[ascertaining] a guest's satisfaction and [handling] any guest issues which may arise, informing a manager of the problem and how it was resolved," and keeping a daily shift log. (Decl. of D. Weiner ("Weiner Decl."), Ex. J ¶ 2.) Plaintiffs assert, based on their own experiences of speaking to captains when applying for work at the Restaurant and being told by captains to report for duty (and similar hearsay information attributed to other Restaurant employees), that captains participated in the Restaurant's hiring process. Plaintiffs also assert that captains had the power to adjust other employees' shares in the tip pool by choosing how many points to allocate to the employees for each shift worked, noting that certain points were reduced and reallocated when employees worked less than a full shift. (Garcia Dep. ¶¶ 80:22-81:7, 83:21-84:5.) Defendants

proffer Collin's affidavits and deposition testimony that he made all of the hiring, firing, and promotion decisions for the Restaurant's employees and that he decided when employees would work full versus half shifts. (Collin Decl. ¶¶ 1, 3; Collin Dep. ¶¶ 34:8-11, 119:13-25.) Collin denies that he ever required the captains to report upon the performance of any employee or to participate in the evaluation of any person employed by the Restaurant, and maintains that he had the sole power to determine how many points an employee received in the tip pool per shift. (Collin Dep. ¶ 84:7-23; Reply Decl. of B. Collin ("Collin Reply") ¶ 19.) There is no testimony to the contrary from any captain.

The Restaurant's bartenders made and delivered drinks for patrons, including mixed drinks, coffee, tea, and wine. (Collin Dep. ¶ 80:17-25.) Bartenders made drinks for customers seated at the Restaurant's tables as well as the 10-seat bar counter. (Collin Decl. ¶ 11.) Plaintiffs testified, and Defendants acknowledge, that for at least a portion of the time during which some Plaintiffs were employed, there were no stools at the bar counter. Certain Plaintiffs testified that they never saw customers drinking at the bar during their employment; Defendants proffer testimony that customers were served at the bar even when there were no stools. (Khassanov Dep. ¶ 69:16-19, 160:19-161:5; Garcia Dep. ¶ 122:14-123:23; Collin Dep. ¶ 34:10; Ricardo Dep. ¶ 20:24-21:6; Collin Reply ¶ 24.)

The Restaurant's banquet coordinator communicated with customers who chose to hold special events at the Restaurant, planning the events and assisting the customers in choosing food and drink menus, setting a date, and determining event seating. (Collin Dep. ¶ 100:10-17.) On the day of the event, the banquet coordinator greeted and seated guests, coordinated service timing with the kitchen and the waitstaff, and ensured that the event proceeded to the customers' and guests' satisfaction. (Id. ¶ 101:11-21; Collin Decl. ¶ 15.)

The parties' evidentiary proffers differ as to the degree to which bartenders, captains, and banquet coordinators engaged in direct table service of the type performed by bussers, runners, and servers. Defendants contend that captains and the banquet coordinator removed and replaced plates, or delivered food, in connection with the resolution of customer concerns or complaints. (Collin Dep. ¶ 80:7-14; Clairay Dep. ¶¶ 32:23, 82:3-19.) Plaintiffs proffer that they rarely if ever saw captains or the banquet coordinator perform such tasks, although they acknowledge that captains and the banquet coordinator worked directly with Restaurant customers. (Zahariev Dep. ¶ 31:4-33:16; Garcia Dep. ¶¶ 54:14-16, 57:6-60:9.)

The Restaurant's tips were distributed pursuant to a written pool allocation formula; for each shift worked, the Restaurant's participating employees received a certain number of points that correlated to their position on the service staff. (See Weiner Decl., Ex. R (Restaurant tip pooling policy).) For instance, the tip pool assigned five points to waiters and four points to runners working the 10:00 a.m. to 3:00 p.m. shift. (See Collin Reply, Ex. A (breakdown of points allocations for tip pool).) The points system allowed for adjustments if an employee was excused before the end of his shift or if he worked beyond certain hours. (Id.) At the end of a shift, an employee's points factored into a "tip sheet" showing the number of hours worked and the number of points allotted to each employee as well as the Restaurant's total tips for that shift. (See Rand Decl., Ex. B (tip sheets).) Employees were paid their share of the tips based on the number of staff and the number of points in the pool for each shift worked. (Id.) The Restaurant divided the amount of tip money received by the number of points in the pool to determine a tips per point value. (Id.) Each employee then received tips equal to the number of points allocated to them for that shift multiplied by the tips per point value. (Id.) For instance, if the Restaurant collected $1793.68 in tips for the dinner shift with 70.6 points in the pool, each

employee would receive $25.64 per point. (Id.) Thus, a server would receive $127.21 for his five points and a runner would receive $73.30 for his four points. (Id.)[2]

The Restaurant paid its bussers, runners, servers, captains, and banquet coordinator straight hourly and overtime wages for shifts for which they participated in the tip pool that were based on a rate reduced by a "tip credit" from the normal statutory minimum wage. As a result, Plaintiffs were paid straight time at a rate of $4.60 per hour rather than the statutory minimum wage of $7.15 per hour. (Id.) See New York Lab. L. §§ 652(1), (5). During training shifts, Plaintiffs received the full statutory minimum wage but did not participate in the tip pool. (Collin Decl. ¶ 36; see also Weiner Decl., Ex. N (Restaurant policy on tips during training); Zahariev Dep. ¶ 14:8-10; Garnek Dep. ¶ 10:10-16; Khassanov Dep. ¶ 24:17-23; Garcia Dep. ¶ 68:21-69:5.) Employees of the Restaurant generally worked four training shifts before becoming a part of the tipped service staff. (Collin Decl. ¶ 36; Weiner Decl., Ex. F, Dep. of A. Clairay ("Clairay Dep.") ¶ 35:18-24.)

When employees of the Restaurant worked during private parties or banquet events, the Restaurant applied a 21% service change to the total event bill. (Collin Decl. ¶ 32.) This amount was then allocated by the same points system used for à la carte among those bussers, runners, servers, bartenders, and banquet coordinators who worked the event. (Id. ¶¶ 33, 34.)

The Restaurant required its employees to wear a uniform that included a vest and an apron. (Collin Dep. ¶¶ 93:16-23; 96:2-4.) Plaintiffs allege that Defendants did not provide them with compensation or reimbursement for their uniform costs, including the cleaning of

---

[2]     The Restaurant's tip sheets show separate "cash per point" and "credit card per point" values. For purposes of the foregoing example, these figures were combined into a single "tip per point" value.

their aprons and vests. (Khassanov Decl. ¶¶ 7-8; Garcia Decl. ¶¶ 8-9.) They also allege that Defendants improperly deducted $100 from their wages to cover the cost of their work vests and that they were never reimbursed for those costs. (Garcia Dep. ¶ 232: 11-24; Zahariev Dep. ¶ 147:19-24.) Defendants proffer that the Restaurant provided its employees with the vests and aprons and, that the Restaurant covered the costs of cleaning the vests and aprons when they became soiled, and that the Restaurant provided clean uniform items on request. (Collin Dep. ¶ 94:3-95:14; Clairay Dep. ¶ 81:13-82:2.) Plaintiffs testified that, while they paid for the vests with a $100 deduction from their wages, the Restaurant reimbursed this money upon the termination of their employment. (Garcia Dep. ¶ 232:13-17; Zahariev Dep. ¶ 147:21-24.) Defendants submitted payroll records showing each Plaintiff's earnings, wages, and deductions during their employment with the Restaurant. (See Weiner Decl., Ex.'s L, M, and O.) Plaintiffs' payroll history shows that Plaintiffs Garnek and Zahariev were reimbursed for their vest deposits upon leaving the Restaurant. (Weiner Decl., Ex. Q at 6; Ex. L at 6.) Plaintiff Khassanov was never charged for a vest. (Weiner Decl., Ex. M at 1.) Though Plaintiff Garcia was never reimbursed for a vest (Weiner Decl., Ex. K at 9.), he indicates in his deposition that he never returned the vest and gives no indication that he paid for this vest during any period where such payment would have reduced his wages below the statutory minimum. (Garcia Dep. ¶ 232:18-233:10.) Although Plaintiff Khassanov states that he believed he had to clean his own uniform, his testimony does not provide any information regarding any costs he incurred for cleaning or any indication that such expenses would have lowered his salary below the statutory minimum wage. (Khassanov Dep. ¶¶ 139:5-18, 187:14-189:10, 190:12-191:25.)

## DISCUSSION

Summary judgment is to be granted in favor of a moving party where the

"pleadings, the discovery and disclosure material on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of establishing that there is no genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). A fact is considered material "if it might affect the outcome of the suit under the governing law," "and an issue of fact is a genuine one where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Holtz v. Rockefeller & Co. Inc., 258 F.3d 62, 69 (2d Cir. 2001) (quoting Anderson, 477 U.S. at 248). The Second Circuit has explained, however, that "[t]he party against whom summary judgment is sought . . . 'must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial.'" Caldarola v. Calabrese, 298 F.3d 156, 160 (2d Cir. 2002) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986)).

Plaintiffs' claims focus primarily on the inclusion of bartenders, captains, and the Restaurant's banquet coordinator in the employee tip pool. Plaintiffs maintain that the Restaurant's bartenders and banquet coordinator did not have enough direct interaction with customers to justify their inclusion in the pool. They further argue that the Restaurant's captains performed a largely managerial role and that they did not customarily or regularly contribute tips to the pool. Plaintiffs contend that, because the tip pool included non-eligible employees, Defendants owe them unpaid wages and overtime compensation for each shift for which Defendants applied a tip credit in calculating Plaintiffs' wages. Plaintiffs also contend that, because the tip credit allowed Defendants to pay Plaintiffs less than minimum wage, Defendants owe them reimbursements for the cost of cleaning their Restaurant uniforms and for shares of tip

money that Plaintiffs allegedly should have received while training at the Restaurant.

The FLSA permits the distribution of tips through tip pooling or sharing agreements. 29 U.S.C.A. § 203(m) (West 1998). While the FLSA generally requires employers to pay each employee an hourly rate equal to the statutory minimum wage, the Act also allows employers to offset the minimum wage of an employee who customarily and regularly receives more than $30 per month in tips by taking a "tip credit" against minimum wage where the employer informs the employee that the credit is being taken and where all tips received by the employee are retained by the employee. See Chan v. Sung Yue Tung Corp., No. 03 Civ. 6048 (GEL), 2007 WL 313483, at *17 (S.D.N.Y. Feb. 1, 2007); Chung v. New Silver Palace Rest., Inc., 246 F. Supp. 2d 220, 228 (S.D.N.Y. 2002). Where an employer takes the tip credit in connection with a tip pooling arrangement, the application of the credit will only be valid so long as the pool includes only those employees who "customarily and regularly receive tips." See 29 U.S.C.A. §§ 203(m), 203(t) (West 1998). In determining whether a participating employee is one who "customarily and regularly receives tips," courts in this Circuit and others focus on whether the employee in question is "part of an occupation that customarily and regularly receives tips," or whether they have more than "de minimis" interaction with customers as a part of their employment. See Kilgore v. Outback Steakhouses of Florida, Inc., 160 F.3d 294, 301 (6th Cir. 1998); Hai Ming Lu v. Jing Fong Restaurant, Inc., 503 F. Supp. 2d 706, 712 (S.D.N.Y. 2007); Chan v. Triple 8 Palace, Inc., 03 Civ. 6048 (GEL), 2006 WL 851749, at *14, n.22 (S.D.N.Y. Mar. 30, 2006).

Under New York law, an employer may not retain any portion of an employee's wages for itself, whether or not it chooses to apply a tip credit. See N.Y. Labor Law §§ 196-d,

652(4); N.Y. Comp. Codes R. & Regs. tit. 12, § 137-1.4. Therefore, the inclusion of an "employer" in a tip pool will invalidate the tip credit applied to employees' wages. Delaney v. Geisha NYC, LLC, 261 F.R.D. 55, 56 (S.D.N.Y. 2009) ("If the tip pool includes employees who do not customarily and regularly receive tips, the employer must pay them the full minimum wage."); Ayres v. 127 Restaurant Corp., 12 F. Supp. 2d 305, 307 (S.D.N.Y. 1998); N.Y. Lab. L. § 196-d. The FLSA defines the term "employer" broadly to include "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C.A. § 203(d) (West 1998). The term is read expansively. See Herman v. RSR Sec. Svcs. Ltd., 172 F.3d 132, 139 (2d Cir. 1999). New York's "employer" provisions are equally broad. Spicer v. Pier Sixty LLC, 269 F.R.D. 321, 335 n.13 (S.D.N.Y. 2010) (term "employer" as used in NYLL construed as coextensive with the definition used by the FLSA).

To determine whether a person acts as an "employer" under the FLSA and the NYLL so as to preclude tip sharing and invalidate the application of a tip credit to employees' wages, courts apply an "economic reality" test. Herman, 172 F.3d at 139. This test examines the totality of the circumstances to determine whether the alleged employer possessed the power to supervise and control the workers in question. Id. (citing Goldberg v. Whitaker House Coop., 366 U.S. 28, 33 (1961)). While no single factor is dispositive in this analysis, courts consider whether the alleged employer had the power to hire and fire employees, supervise and control their work schedules or conditions of employment, determine their rates and methods of payment, or maintain their employment records. Carter v. Dutchess Cnty. Coll., 735 F.2d 8, 12 (2d Cir. 1984) (internal citations and quotations omitted). The "economic reality" test does not require the alleged employer to have full and absolute control over employees or the day-to-day

management of the business; employers who have overall operational or occasional control may still be liable for FLSA violations. Herman, 172 F.3d at 139.

Under New York law, an employer may not require employees to pay for the cost of cleaning and maintaining their own uniforms if those costs would reduce pay below the full statutory minimum wage. See N.Y. Comp. Codes R. & Regs. tit. 12, § 137-1.8. An employee's uniform is defined as "clothing worn by an employee, at the request of an employer, while performing job-related duties" unless it is "clothing that may be worn as part of an employee's ordinary wardrobe." N.Y. Comp. Codes R. & Regs. tit. 12, § 137-3.13. If an employee's uniform costs reduce his pay below the statutory minimum wage, the employee is entitled to recover the cost of the uniform items for which he paid and a statutory uniform maintenance allowance for all weeks in which the employer did not provide such maintenance. See Chan, 2007 WL 313483, at *22.

Tip Pooling Eligibility and the Tip Credit

Plaintiffs claim that the Restaurant's tip pool was invalidated by the inclusion of captains, bartenders, and the Restaurant's banquet coordinator. They further claim that, because those employees participated illegally in the tip pool, the Restaurant wrongfully applied the statutory tip credit to Plaintiffs' hourly wages and therefore failed to meet its minimum wage requirements under federal and state law. As noted above, an employer may apply the tip credit to the wages of employees participating in a tip pool only if that pool includes employees who "customarily and regularly" receive tips for their services. The requirements of the tip credit are strictly construed and employers must comply with them even if, as Defendants contend, the Plaintiffs actually earned more than minimum wage for every shift they worked at the

Restaurant. See Chung v. New Silver Palace Restaurant, Inc., 246 F. Supp. 2d 220, 228-30 (S.D.N.Y. 2002).

In the instant case, Plaintiffs argue that the Restaurant's captains, bartenders, and banquet coordinator do not qualify as employees who "customarily and regularly receive tips" because these employees did not engage in sufficient direct food and beverage service interaction with Restaurant patrons to collect tips for such activities. However, it is undisputed that captains and the banquet coordinator had regular interactions with customers in connection with core Restaurant functions. Captains' duties included ascertaining guest satisfaction and resolving any issues that might arise in that connection; the banquet coordinator dealt directly with private party hosts in advance of events for planning purposes and worked directly with the hosts and their guests during the events to ensure their satisfaction. These duties constitute more than de minimis customer interaction. Plaintiffs' citation to authority concerning the ineligibility of employees such as dish washers, cooks, and janitors working in non-customer service hours to share in tips[3] is therefore inapposite. The evidence of record also establishes that bartenders served customers directly; Plaintiffs' anecdotal evidence that they did not see the bartenders do so during their own work shifts is insufficient to raise a genuine issue of material fact as to bartenders' customer interaction.

Plaintiffs testified that captains behaved as managers and that they were involved in the process of hiring employees. (Zahariev Dep. ¶¶ 15:2-16, 22:13-22; Garnek Dep. ¶ 40:2-17.) Plaintiffs also asserted that captains had the power to determine whether servers received extra points during their shifts and therefore controlled each employee's share of the tip pool.

---

[3]  See Hai Ming Lu, 503 F. Supp. 2d at 711.

(Zahariev Dep. ¶ 128:1-129:25; Garnek Dep. ¶ 39:2-4; Garcia Dep. ¶ 82:13-83:6; Khassanov Dep. ¶ 161:8-18.) Based on this testimony, Plaintiffs argues that captains were "employers" within the meaning of the economic reality test and thus ineligible to participate in the tip pool.

Defendants have, however, proffered evidence that Collin had the sole authority to hire and fire employees and that Collin made all decisions related to the Restaurant's staffing needs, including how to schedule shifts, how many staff members were needed per shift, and how much each employee would take from the tip pool during those shifts. (Collin Decl. ¶ 1; Collin Dep. ¶ 84:7-23; Collin Reply ¶ 19.) Defendants also proffered evidence showing that the Restaurant's tip pool was operated under a rubric that allowed half-point additions and subtractions in light of the Restaurant's staffing needs during each shift. (Weiner Decl., Ex. R.) This rubric shows that each member of the staff had points added or subtracted depending on whether they completed a full shift or were "cut" before the shift's end. (Id.) In light of this evidence, Plaintiffs' proffers are insufficient to raise a genuine issue of material fact as to whether the captains behaved as "employers" because, even if it existed, the captain's power to adjust points was not discretionary and Defendants' evidence demonstrates that the captains did not exercise control over the hiring, firing, or evaluation of employees. (Clairay Dep. 60:23-61:23; Collin Dep. 84:7-23.) Plaintiffs' assertions to the contrary, which are based solely on their interactions with the captains rather than any personal knowledge of the Restaurant's decision-making process, are too speculative to frame genuine issues of material fact as to the captains' possession or exercise of management authority. Furthermore, the record indicates that captains play a substantial role in customers' dining experience at the Restaurant by assisting servers, answering questions, and overseeing food service. (Weiner Decl., Ex. I (captains' job

description); Collin Dep. 79:9-80:14; Garcia Dep. 57:11-20.) The Court finds that, because the undisputed evidence of record shows that captains had more than de minimis interaction with the Restaurant's customers and did not act as employers vis-a-vis the other members of the Restaurant staff, their inclusion in the tip pool was proper.

Because the inclusion of the captains, bartenders, and the banquet coordinator in the Restaurant's tip pool was proper under the FLSA and the NYLL, the Restaurant's application of the tip credit to Plaintiffs' wages was valid as a matter of law. Summary judgment dismissing Plaintiffs' tip pooling and tip credit claims will therefore be granted in favor of the Defendants.

Overtime Noncompliance Claim and Spread of Hours Claim

In addition to their tip pooling claims, Plaintiffs allege that Defendants did not pay them adequate overtime and spread-of-hours compensation during their employment. (Compl. ¶ 51; Garnek Decl. ¶¶ 6, 22-24; Zahariev Decl. ¶¶ 6, 21-23; Garcia Decl. ¶¶ 5, 22-24; Khassanov Decl. ¶¶ 6, 21-23.) Both the FLSA and New York law require employers to pay their employees an overtime rate of one-and-a-half times the regular pay for each hour of work over forty hours in a week. 29 U.S.C.A. § 206 (West 1998); N.Y. Lab. Law § 650 et. seq., N.Y. Comp. Codes R. & Regs. tit. 12, § 137-1.3. New York law also provides that any restaurant employee whose workday is longer than ten hours "shall receive one hour's pay at the basic minimum hourly wage rate before allowances, in addition to the minimum wage otherwise required." N.Y. Comp. Codes R. & Regs. tit. 12, § 137-1.7. An employee seeking to recover unpaid minimum wages or overtime under FLSA bears the burden of showing that he performed work for which he was not properly compensated. Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687 (1946). In this case, Defendants proffered undisputed evidence that they properly

accounted for employees' hours. (Weiner Decl., Ex.'s I, J, K, O (records displaying payroll history for named Plaintiffs)). Their uncontested proffers also indicate that they paid both straight and overtime hours at the tip-credit rates for non-trainees and full minimum wage for trainees. There is no genuine issue of material fact with respect to this claim and summary judgment is therefore granted to Defendants.

Tips During Training

Summary judgment will also be granted dismissing Plaintiffs' claim for tips during training because there is no evidence that Defendants applied the tip credit to Plaintiffs' wages during their training shifts. Each of the Plaintiffs testified that he was paid the full minimum wage with no tip credit applied during his training period. (Zahariev Dep. ¶ 14:3-14; Garnek Dep. ¶ 10:17-24; Garcia Dep. ¶ 73:10-73:21; Khassanov Dep. ¶ 24:21-23; Weiner Decl., Ex. N (Restaurant Handbook containing policy on tips during training).) Because each of the Plaintiffs was paid minimum wage for his training shifts, there was no requirement that they be included in the tip pool. Furthermore, there is no evidence that any tip given personally to any plaintiff for individual services was withheld, and there is no other proffer of legal or factual basis for Plaintiffs' claim that tips should have been allocated to them during the training period. See Cumbie v. Woody Woo, Inc., 596 F.3d 577, 582 (9th Cir. 2010). Defendants' motion for summary judgment on this claim is, therefore, granted.

Plaintiffs' Uniform Expenses

Plaintiffs factual proffers do not establish a genuine issue of material fact as to their entitlement to an allowance or reimbursement for uniform cleaning. The record demonstrates that there were clean vests and aprons available at the Restaurant and that

Defendants regularly took employees' uniforms for cleaning. (Clairay Dep. ¶ 81:13-82:2; Collin Decl. ¶ 37, Ex. B (Restaurant dry cleaning receipts); Zahariev Dep. ¶ 147:1-148:25; Garcia Dep. ¶ 163:20-164:5.) Plaintiffs have proffered no evidence showing that any employee incurred uniform cleaning expenses or that any such expenses would have reduced such employee's compensation below the statutory minimum wage rate. Summary judgment will therefore be granted in Defendants' favor as to Plaintiffs' claim based on failure to reimburse for uniform cleaning.

Summary judgment is also warranted with respect to Plaintiffs' claims that Defendants are liable for the cost of their uniform vests. There is no evidence that any employee who sought reimbursement of the $100 vest charge was denied it, or that any such charge reduced any employee's compensation below the statutory minimum wage. Accordingly, summary judgment will be granted to Defendants on Plaintiffs' claims for uniform reimbursement.

Individual Liability

In light of the Court's determination that Defendants are entitled to summary judgment dismissing all of Plaintiffs' claims, it is unnecessary for the Court to address the element of Defendants' motion that seeks dismissal of the claims as against certain individual Defendants.

CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is granted in its entirety.

This opinion and order resolves docket entry no. 79.

The Clerk is requested to close this case.

SO ORDERED.

Dated: New York, New York
January 13, 2011

_____
LAURA TAYLOR SWAIN
United States District Judge